The next case this morning is 5-21-0-219 People v. Vickers. Arguing for the defendant appellant is Pamela Rubio. Arguing for the state is Louise Hizel. Each side will have 10 minutes for the argument. The appellant will also have 5 minutes for rebuttal. Please don't worry, the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Morning, your honor. Ms. Rubio, are you ready to proceed? I am. Then go right ahead. Okay. Good morning, your honors. My name is Pamela Rubio with the Office of the State Appellate Defender, and I represent Tracy Vickers. May it please the court. At this time, I'm going to be focusing on Mr. Vickers raised two issues in his brief. I'll be focusing on the first issue, but I'm happy to answer questions about either issue. Before pleading guilty to the second degree murder of his friend, Toby Gross, Tracy Vickers explained to the circuit court that Toby attacked him first, but he had no witnesses to back his claim. Now, he does have a witness, DeJuan Lockett, whose affidavit provides proof that Toby was the initial aggressor, which is what Tracy has been saying all along. Tracy's actual innocence claim meets the burden of proof necessary to warrant an evidentiary hearing. First, the evidence is newly discovered. PC counsel was appointed to represent Tracy at second stage proceedings, and he filed an amended petition raising this actual innocence claim. He explained on the record that Tracy did not know about Mr. Lockett, and Mr. Lockett was not mentioned in any of the discovery material, including the state's list of potential witnesses that it had filed prior to the guilty plea proceedings. And in DeJuan's affidavit, he explained that he was never questioned by the police or an attorney at the time of the altercation, so it could not have been discovered, he could not have been discovered before the guilty plea proceedings. The state argues in its brief... Stop the recording just for a second. We must have lost internet. Give me a second. Nope, she's back. Ms. Rubio? Yes. All right, we stopped your time, so hopefully you didn't lose any. If not, we'll make sure you get to take care of that. Okay. Go right ahead. Uh, where did you hear me leave off? The state argued in its brief. Okay, the state argued in its brief that this evidence could have been discovered with due diligence, but doesn't explain how, if none of the parties knew that Duane Lockett was a witness until post-conviction investigations began. How did they find out he was a witness? It's unclear from the record at this time. PC counsel just said that he was looking into investigating the case, asked for a private investigator to be appointed, and the court granted that. And then after he had mentioned he wanted a private investigator to be able to question Duane Lockett. So it's not exactly clear based on this record how they found Duane, but it is clear from the record that nobody knew about him until these PC investigations began. Did the request for the private investigator, was it specifically to interview this Mr. Lockett? Or was it simply we'd like a private investigator to explore a bunch of different avenues, and then after that person was appointed and did his or her initial investigation, found that Mr. Lockett could be a witness to the crime? The court order was specific to locating and interviewing Duane Lockett. Mr. Vickers did not mention Duane in his initial post-conviction petition. He raised a constitutional claim and an actual innocence claim, but did not mention Duane at the time he filed his initial PC. So presumably at some point during post-conviction investigation into his actual innocence claim, that's when PC counsel unearthed Duane as an actual witness. So it was specific to locating and interviewing Duane. And then after that was when PC counsel filed an amended petition attached to which was Duane's notarized affidavit. So is there any testimony from any of the witnesses? That were no witness testimony, but did Mr. Lockett, was Mr. Lockett's presence during the commission of this charged event discovered by talking with other witnesses who were of record at the time, who then supplied Mr. Lockett's name? Or did what I guess what I'm trying to find out is, did Mr. Vickers know that Mr. Lockett was at the scene when all this went down? Or did he learn of that through someone else later? No, he did not know. Even at the factual, during the guilty plea proceedings, he disputed some of the facts that were presented during the factual basis and said to the court right before entering his guilty plea that he was defending himself. He didn't mean to kill his friend Toby, but Toby had butted him and broke his tooth and they started fighting and he needed to defend himself. But he explicitly said during the proceedings, but he had no witnesses to back his claim. And he said that all of his friends who were on the scene were in the house and not present for the altercation. So Duane was, I'm assuming if he knew that Duane was there and had witnessed this, he would have mentioned it during the guilty plea proceedings. He would have mentioned it in his initial post-conviction petition that he filed. But he didn't know of it until PC counsel began investigating the case. I don't know, the facts don't present, but I'm just assuming that PC counsel started investigating his claims and maybe one witness led to another witness. It's kind of unclear, but that's something that could be fleshed out during an evidentiary hearing. But in, I'm sorry. Let me ask you one more question. And this is perhaps I'm jumping ahead in your presentation. You may have gotten to this, but so that's fine. I don't recall in your brief, you bringing out any of the statements that your client made when he was arrested and during the course of his time prior to trial, that the state brings out, suggesting that he admitted he approached the victim first, that he swung at him first, that he went out to confront him about money that was owed. This is all completely in conflict to what he's saying now, that he went out to check on his friend, that his friend bum-rushed him, basically head-butted him, and that's what started the fight. How do you rectify the different statements there? Well, I think it has to be clarified that at no point during the guilty plea proceedings or in any court proceeding did Tracy admit to beginning this altercation. I believe that the state argued in its brief that by correcting the court during the factual basis, the factual basis stated that he had come up from behind Toby and attacked him and started choking him. And Tracy, during the factual basis, the court said, you know, there's some dispute about this. And Tracy said, no, no, no. I did not approach him from behind and attack him. I was in front of him. But him placing himself in front of him did not mean that he was admitting to initiating the altercation. And I think that was a little bit unclear in the briefing. He clarified, or he told the court, I wasn't coming from behind him. I was in front of him. He head-butted me, broke my tooth. We started fighting. And I did not mean to kill him. What about the statement that... The statement comes in during the factual basis when the state includes an alleged confession that Tracy made to the police. According to the factual basis, Tracy initially told the police exactly what he said during the guilty plea proceedings, that, you know, they were arguing about money and Toby attacked him. And then according to the factual basis, he changed his story and he admitted to attacking him first and choking him. That is not a positive rebuttal of the assertions made in the petition because for several reasons. First, it's a factual basis. So it's a less stringent level of proof. The police officer who allegedly took this statement was never cross-examined, never testified under oath. So the credibility of that statement was never put to test. Second, Tracy did dispute the veracity of that statement during the guilty plea proceedings. But he said, but you know what? I don't have any witnesses to back me up. So I'm just, I'm tired. I'm going to take this plea. And now we know, you know, he does have a witness. So those are factual issues that have to be resolved at a third stage hearing. The Dwayne Lockett's affidavit would go towards undermining the veracity of that alleged statement. And, you know, another thing to note is that if we use a factual basis to, as evidence of positive rebuttal of post-conviction claims, the holding in Reed would be completely pointless because Reed states that a defendant can raise a claim of actual innocence after a guilty plea in a post-conviction petition. And in every guilty plea case, there would be a factual basis. And so there was always going to be a conflict between the evidence presented during the factual basis and the evidence presented in a post-conviction petition. So that that conflict exists does not equate to a positive rebuttal. A positive rebuttal is more like something that would make it essentially impossible for the petitioner's claims to be true, like DNA evidence or surveillance video. This is a factual dispute. And factual disputes can only be rectified at a third stage hearing where witnesses can be called and testify under oath and be cross-examined. So not only- Ms. Rubio, let me ask you a question. The defendant pled guilty to a lesser offense where the issue was whether there was an unreasonable amount of force used. So what difference does it make who started the fight? Assuming that the witness is true, he can still plead guilty to the unreasonableness of the force that he used, right? Well, the difference here is that he is asserting that and Dwayne Lockett's affidavit would go towards placing the evidence in a different light. And that's the standard that he has to meet here. Placing the evidence in a different light so that it would go towards proving he was not the initial aggressor and he did act reasonably in defending himself. The difference between reasonable self-defense and unreasonable self-defense in this case is 30 years. If he can prove that he acted in reasonable self-defense, that's acquittal of the charges of murder, as opposed to a 30-year sentence that he is serving right now. So there's a big difference between it. Because the charge of second degree contemplates the act of self-defense, the question is reasonable versus unreasonable. But when he pled guilty, he was told that he was giving up the right to present his self-defense. The court said, I want to make sure you understand that if you plead guilty, you're giving up your rights to present the defense of self-defense to a jury. That's correct. And you understand that. And he responded, yes. Right. But in any guilty plea proceeding, when a person is pleading guilty, they're admonished about the rights that they're giving up by not going to trial, being able to present witnesses, not being able to present a defense. And in every guilty plea that's correctly administered, a defendant is going to give up those rights. But that doesn't mean that they're later precluded as our Supreme Court recently held in Reed. They can still raise a claim of actual innocence even after being admonished. And their plea doesn't have to be not knowing or involuntary. They now have actual evidence of innocence that they did not have sooner. And he did, like I said before, he did explain to the court, I'm pleading guilty because I'm tired. The court, the case had been pending for two years. He said he had no witnesses. His friends were in the house and he had no one, quote unquote, to back his claim. And now he does. And so that's why just because he was admonished about what he was giving up does not mean that he can't pursue this claim now. Okay, I see your time is up. Thank you. Thank you. Well, and obviously, Ms. Rubio, you'll have your opportunity for your rebuttal. But before we do move on to the state, Justice Gates and Justice Barber, do you have any other questions at this point? No. No. All right, well, thank you. Thank you. Go right ahead. Thank you, Your Honor. Good morning, Your Honor's counsel and may it please the court. My name is Luis Izzo and I represent the state on the matter. This honorable court should affirm the trial court's dismissal of the defendant's post-conviction petition as the defendant fails to show a substantial constitutional violation for two reasons. First, the trial court erroneous, or excuse me, the trial court correctly dismissed the defendant's post-conviction petition at the second stage because the defendant's claim of actual innocence was not supported by new material, non-cumulative evidence that would probably result in acquittal. And second, the defendant's claim of ineffective assistance of counsel fails because the defendant's claim cannot satisfy the requirements set forth under Strickland. To my first point, Your Honor, it is the state's position that standard under the Illinois Supreme Court and People v. Reed is the proper applicable standard here. Under the Supreme Court's decision in Reed, in order to establish a successful claim of actual innocence, a guilty plea defendant must show new material evidence that is non-cumulative that clearly and convincingly demonstrates a trial court that a trial would probably result in acquittal. It's important, Your Honor, because the state wants to position the court to understand that the question before Reed was whether a defendant who pleads guilty waives any claim of actual innocence under the Post-Conviction Petition Act. The defendant here is asking the court to apply the Lofton standard, which is a lower standard, and he argues that that lower standard is what's applicable here for the purposes of the argument I will divulge in that lower standard with the caveat that the defendant cannot meet neither standard, Your Honors. It is the state's position that the standard in Lofton is not dispositive because during its analysis, the court cites to People v. Ortiz, an Illinois Supreme Court decision where the court was considering a defendant's claim following a third-stage evidentiary hearing. So if this court finds that the lower standard is applicable here under People v. Lofton, it is the state's argument that the defendant cannot meet their burden. First and foremost, the defendant cannot show the evidence surrounding Mr. Lockett's affidavit could not have been discovered earlier through the course of due diligence. As Mr. Lockett's affidavit indicates, he witnessed the altercation between the defendant and the victim, and that is found under the record C-201. In that same affidavit, Mr. Lockett indicates in his affidavit that he knew the defendant personally at the time of the altercation. Line three specifically indicates that at the time I knew who Tracy Vickers was, but I did not know who Tobias Gross was. Tobias Gross is the victim here. This is evident that the defendant could have requested trial counsel to investigate Mr. Lockett's potential to be an eyewitness to the altercation and see if he could provide a statement than when it is actually received by the court. This piece of evidence was always available, and had trial counsel been informed of Mr. Lockett by the defendant, trial counsel would have been able to obtain these statements. Again, it is the state's position that it's not that this evidence would not have been discoverable, it's just the due diligence aspect of it. Had trial counsel been aware, there's this other individual who may or may not have seen the altercation, trial counsel would have then gone and investigated and attempted to, much like post-conviction counsel did, attempted to receive a statement, interview the individual. Again, it's that due diligence aspect of the requirement that the state is asserting that the defendant cannot meet that burden. Well, you heard Mrs. Rubio, or Ms. Rubio say that there was no indication that Mr. Lockett was present, no one knew that. Presumably, the defendant did not know that, the police didn't know that, didn't have it in a report or anything, and the defense's investigation didn't uncover the fact that Mr. Lockett was present during this altercation. Under the facts of this, how he was discovered isn't that kind of the poster boy for finding new evidence? Your Honor, it's our position that it's not. And again, I would refer to the affidavit where it states, hey, I know the defendant personally. That means that personal knowledge, again, the defendant- Okay, I'll stop you there. I know that Mr. Lockett in his affidavit states that he knew the defendant personally, but how does that jump to the fact that the defendant knew that Mr. Lockett was there witnessing the altercation? Not towards the knowledge, Your Honor, but we would argue that through due diligence had defense counsel gone and interviewed potential eyewitnesses from that block of where the incident occurred, knocked on doors, similar to how police investigations occur when they try to knock on surrounding neighbors and see if anyone saw anything. I mean, there's nothing in this affidavit or that the defendant alleges that he tried to do that prior to this. It's that due diligence that in our opinion, Your Honor, the defendant had not exercised that prior to post-conviction. It's our position then that once post-conviction counsel was appointed, everything under the rug was lifted. At that point, the defendant's not preventing himself from exercising or limiting his means to find quote-unquote new evidence. This is something that could have been discoverable prior to. Second, there is nothing about Mr. Lockett's affidavit that adds to the facts presented before the trial court. Therefore, it renders his statement cumulative. Mr. Lockett's affidavit states that he saw the victim rush the defendant and headbutt him and that the defendant then tackled the victim to the ground. Again, that's found in C-201. The affidavit further states that both the defendant and the victim wrestled on the ground for a very short period of time and the defendant got up from the ground and ran away. This fails to present any evidence that bolsters the defendant's claim of reasonable self-defense. The defendant pled guilty to second-degree murder and the defendant's belief in deadly use of force was unreasonable. The use of force and self-defense is justified as this court is well aware when the defendant is not the initial aggressor and the defendant reasonably believes that he is threatened with force that will cause death or great bodily harm and danger of that harm is imminent. Although the affidavit asserts that the defendant was not the initial aggressor, there is nothing in the affidavit suggesting that the defendant would have been justified in using deadly force to defend himself. There's simply not enough allegations on his face to meet this prong and the material within the statement is then rendered cumulative. Furthermore, in People v. Stein, it instructs that non-meritorious petitions like the one presented may be dismissed without a hearing on the basis of what is contained within the petition and what is revealed on the record of the trial court's proceedings. Mr. Lockett's affidavit suggests that the victim rushed the defendant and then the defendant head-butted him in return and the defendant reacted by tackling him to the ground. Here, the record reflects contrary to Mr. Lockett's affidavit in that at the time that the defendant's plea was entered, he insisted that he approached the defendant and came from in front of him before the victim head-butted him and I'm quoting the record. The court, Mr. Vickers, you gave two different versions of what, or excuse me, Mr. Vickers, you gave two different versions. Did you come up from behind the victim to which the defendant replied, no, sir, I didn't. I came from in front of the victim. There's no way possible I could come from behind him. I came from in front of him. Although at this stage in the proceedings, the trial court cannot make credibility determinations of the statements presented on the affidavit, the trial court can make logical determinations on meritless claims that are unsupported by the record and here the record reflects contrary to what the affidavit is suggesting. Therefore, again, it's rendering the affidavit meritless. It's not adding anything new that the trial court already didn't know. Furthermore, the defendant's admission to initiating the altercation further shows that the defendant had an unreasonable claim of a justified killing in self-defense at the time of the incident. Finally, the defendant cannot show that Mr. Lockett's affidavit alone is of such conclusive character that it would probably change the result of trial. Here, the defendant would have to overcome admissions that he gave at the time that he was arrested, which would ultimately have been presented at trial and were presented by the state during the factual basis of the plea hearing. Your Honor, for those reasons, we would ask this court to affirm the lower court's decision, deny the defendant's claim for a third stage and I would rest on the rest of my plea. Thank you. Thank you, counsel. Before we move to rebuttal, Justice Cates or Justice Barberis, do you have any questions? No, thank you. No, thanks. All right. Thank you, Ms. Hizzo. Ms. Rubio, go right ahead. Thank you. I just have a few points to make. With respect to the burden of proof applicable in this case, we contend that People v. Reed is not the proper standard. That created an elevated burden of proof that's applicable at third stage hearings. And in a footnote in Reed, the court itself acknowledged that credibility determinations can only be done at third stage hearings when they proclaimed that elevated burden of proof. And it makes sense to apply the traditional second stage standard of proof in this case. Because if clear and convincing were the applicable standard at second stage, after second stage, why wouldn't the circuit court just give the defendant a new trial? What's the point of going to a third stage? It's at the third stage when the clear and convincing standard would be applicable. And that's when credibility findings can be made and factual disputes can be resolved. But under either standard, Tracy asserts that he can meet either standard because the new evidence he did present does provide clear and convincing evidence, which is still less than the beyond a reasonable doubt standard, which would support an affirmative defense of self-defense. In relation to counsel's argument that because Tracy and Duann knew each other, that would lead to the conclusion that due diligence could have uncovered Duann as a witness. There's no indication in his affidavit that where the two men knew each other from. It didn't say that he lived on the block. He didn't say that he lived in the building. So just that he knew they knew each other. And I know a lot of people that wouldn't make me think that my attorney should talk to every single human being that I am friends with if I were involved in a situation like this. So I don't think that due diligence could have uncovered him. And in fact, if it could have, Tracy would have mentioned it sooner. And then with respect to the cumulative argument, again, Duann's affidavit puts this case in a different light, puts Tracy's assertion that he acted to defend himself in a different light. And just because Tracy said that during the guilty plea proceedings does not make it cumulative that the new evidence would corroborate one witness. That was a situation that occurred in People v. Colnett. That was a third stage actual innocence claim. And some new evidence was presented that there was one witness who had testified to what the new witnesses were saying. And the Supreme Court said that just because there was one witness who had already said that at the trial does not mean that it was cumulative. It would corroborate that witness and it's still new evidence. Here, we have much less to go on because it was a guilty plea and the factual basis can't be, it can't be used to positively rebut the allegations in his petition. So for those reasons, Tracy Vickers asked that this court reverse the second stage dismissal of his petition and remand for a third stage evidentiary hearing. Thank you, Ms. Rubio. Before we let counsel go for the day, Justice Cates or Justice Barberis, do you have any final questions? No, thank you. None, thank you. Well, counsel, obviously, we will take this matter under advisement. We will issue an order in due course. I believe that concludes our court proceedings for today. And we will stand in recess until nine o'clock, fall morning.